IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANCOIS LAFATE,** | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No.: 13-cv-5555 |
| | : | |
| **THE VANGUARD GROUP, INC.,** | : | |
| **Defendant.** | : | |

## MEMORANDUM

**LYNNE A. SITARSKI**                                                               **DATE:  September 5, 2014**
**UNITED STATES MAGISTRATE JUDGE**

      Presently before the Court are: (1) Plaintiff's Motion to Compel Defendant Vanguard's Response to Discovery (ECF No. 34) and Defendant's opposition thereto (ECF No. 37); (2) Plaintiff's Supplemental Motion to Compel Defendant Vanguard's Response to Discovery (ECF No. 42) and Defendant's opposition thereto (ECF No. 47); and Plaintiff's Motion for Leave to Take Additional Depositions (ECF No. 40) and Defendant's opposition thereto (ECF No. 50).[1] For the following reasons, Plaintiff's Motion to Compel will be DENIED; Plaintiff's Supplemental Motion to Compel will be DENIED AS MOOT; and Plaintiff's Motion for Leave to Take Additional Depositions will be GRANTED IN PART and DENIED IN PART.

### I.   BACKGROUND

      Because the Court writes for the parties, we set forth only a brief recitation of the facts necessary to decide the instant motions.

      This is an employment discrimination case brought by Plaintiff, Francois Lafate, against

---

[1] By Order dated July 21, 2014, the Honorable Nitza I. Quinones Alejandro referred all pending discovery motions to me pursuant to 28 U.S.C. § 636(b).

his employer, the Vanguard Group, Inc.  Plaintiff claims that the Defendant discriminated and retaliated against him on account of his race, color, and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951 et seq.  In particular, Plaintiff claims that two supervisors, Jennifer Vastardis and Wayne Park, gave him two negative performance appraisals and demoted him from an F-Level to E-Level position in the Participant Services Department because of his race and/or in retaliation for complaining of alleged racist comments.  (Compl. ¶¶ 19, 21, 46, 51, 70, 82, 97, 106).  Plaintiff also alleges that he was subjected to a hostile work environment based primarily on conduct by three of his coworkers, Mark Loikits, Patrick Fertig, and Doug Lammer.  (Compl. ¶¶ 31-35).  Plaintiff claims that he complained about his mistreatment to Dena Bailly in the Crew Relations Department, but that Ms. Bailly conducted an insufficient investigation into his complaints.  (Compl. ¶¶ 83-89).  Plaintiff also alleges in the Complaint that Defendant employs facially neutral policies that have a disparate impact on African-American employees.  (Compl. ¶¶ 8, 121).

During discovery, Plaintiff served ninety-seven document requests on Defendant.  In response, Defendant provided over 2,000 pages of documents.  (Resp. 3, ECF No. 37).  However, Defendant objected to approximately twenty-eight requests on the grounds that: they seek materials that are not relevant to his claims; it would be unduly burdensome to the Defendant to produce all documents responsive to these requests; and several of the requests seek private information on non-parties that should be precluded from discovery.  The parties have not been able to reach an agreement with respect to these requests.

Accordingly, on June 20, 2014, Plaintiff filed a motion to compel Defendant Vanguard's

Response to Plaintiff's Request for Production of Documents Nos. 13, 14, 15, 16, 31, 34, 35, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 75, 76, 92, 93, and 94.  (ECF No. 34). Plaintiff subsequently filed a supplemental motion asking for more complete responses to request Nos. 10 and 11.  (ECF No. 42).  Defendant opposes both motions.  (ECF Nos. 37, 47).

On July 15, 2014, Plaintiff also filed a motion pursuant to Rule 30(a)(2) of the Federal Rules of Civil Procedure seeking leave to take several depositions beyond the ten that are permitted by the Federal Rules.  (ECF No. 40).  Defendant opposes this motion as well.  (ECF No. 50).

On July 21, 2013, this matter was referred to me for disposition.  (ECF No. 46).  That same day, the District Court extended the discovery deadline in this matter.  (ECF No. 45).

On August 20, 2014, the parties appeared before me for a hearing on the motions. Following argument, they submitted letters updating the Court as to the status of Plaintiff's document requests.  At this time, the following document requests remain in dispute: Nos. 13–15, 34–35, 57–59, which Plaintiff has labeled the "Disparate Impact Requests," and Nos. 16, 46–56, 61, 75–76, and 94, which Plaintiff has labeled the "Deficient Enforcement and Crew Relations Requests."[2]  (Pl.'s Aug. 22, 2014 Lttr 1-3).  For purposes of deciding these motions, we  adopt the "groupings" set forth by Plaintiff.

The Disparate Impact Requests:

No. 13:    Documents that describe all programs instituted, implemented or maintained by Vanguard from January 1, 2001 to the present that seek to increase racial diversity at Vanguard generally or among Vanguard's management team.

---

[2] Plaintiff's motion also sought materials responsive to requests 31, 60, 92, and 93; the parties have informed the Court that these requests are no longer at issue.

> No. 14: All statistical data, focus group results and any documents that were generated or produced prior to or in conjunction with the creation of any such diversity program as described in Request No. 13 that shows the progress or lack of progress of Vanguard in hiring, promoting, rewarding and retaining Black employees.
>
> No. 15: The score cards, statistical measurements or other metrics generated or maintained during the period of January 1, 2001 to the present by Vanguard's Office of Diversity that track, concern, reflect or relate to the hiring, promotion, retention, discipline and pay of Black Vanguard employees.
>
> No. 34: All documents that refer to, relate to, or evidence the breakdown of the workforce of Defendant by race.
>
> No. 35: All documents that refer to, relate to or evidence statistics regarding the percentage of African Americans holding management positions at Vanguard, including but not limited to statistics that delineate the percentage of African Americans holding Level E & Level F positions.
>
> No. 57: Documents that individually or collectively identify all Black employees who were terminated, demoted or transferred during the period of January 1, 2001 to the present and that identify the individual who replaced each such Black employee, including the individual's name, race, gender and last known address.
>
> No. 58: Documents that individually or collectively show all overall performance evaluation ratings, bonuses and merit pay of Vanguard employees by race and gender from the period of January 1, 2008 to the present.
>
> No. 59: The termination files of all Black employees from the period of January 1, 2008 to the present.

(First Request for Production of Documents, ECF No. 34-1). Plaintiff has narrowed these requests, to the time frame of 2007 to the present, and has limited the scope to all leaders below the level of principals and to the Participant Services Department. (Lttr Aug. 22, 2014, at 1).

The Deficient Enforcement and Crew Relations Requests:

No. 16:	The files created and maintained by Sharon Barnes during her tenure at Vanguard as Diversity Principal regarding complaints of discrimination made by Black employees of Vanguard.

No. 46:	Documents that individually or collectively identify all lawsuits or other judicial proceedings to which Vanguard has been a party, other than this lawsuit, involving a claim of discrimination or harassment based on race or a claim of retaliation for complaints of unlawful discrimination or harassment.

No. 47:	Documents that individually or collectively identify all employees who have complained to Vanguard of race discrimination, disparate treatment or harassment by Vanguard or by any of its employees or agents from January 1, 2001 to the present and that identify the substance of each such complaint and the action taken by Vanguard in response to the complaint.

No. 48:	Documents that individually or collectively identify all EEs determined by Vanguard to have made complaints of discrimination, disparate treatment or retaliation that were unfounded, unsubstantiated or otherwise warranted no action by Vanguard from January 1, 2008 to the present.

No. 49:	Documents that individually or collectively identify all employees who have complained to Vanguard about being retaliated against for making a complaint of race or gender discrimination or harassment from January 1, 2008 to the present and that identify the substance of each such complaint and the action taken by Vanguard in response to the complaint.

No. 50:	Documents that individually or collectively identify all employees who have been terminated subsequent to complaining of discrimination or retaliation by Vanguard or by its employees or agents from January 1, 2008 to the present.

No. 51:	Documents that individually or collectively identify all employees who have been demoted subsequent to complaining of discrimination or retaliation by Vanguard or by its employees or agents from January 1, 2008 to the present.

No. 52:	Documents that individually or collectively identify all Black employees who have complained to Vanguard regarding being involuntarily transferred to a different division or department or being demoted during the period of January 1, 2008 to the present and that identify the substance of each such complaint and the action taken by Vanguard in response to the complaint.

No. 53:   Documents that individually or collectively identify all Black employees who have complained to Vanguard regarding merit increases and bonuses, and that identify the substance of each such complaint and the action taken by Vanguard in response to the complaint.

No. 54:   Documents that individually or collectively identify all Black employees who have complained to Vanguard about being set up or positioned to fail or not being positioned or adequately supported to succeed during the period of January 1, 2008 to the present and that identify the substance of each such complaint and the action taken by Vanguard in response to the complaint.

No. 55:   Documents that individually or collectively identify all Black employees who have complained to Vanguard about low, poor or inadequate performance evaluations during the period of January 1, 2008 to the present and that identify the substance of each such complaint and the action taken by Vanguard in response to the complaint.

No. 56:   Documents that individually or collectively identify all Black employees who have complained to Vanguard's Crew Relations about harsh or unfair disciplinary actions during the period of January 1, 2008 to the present and that identify the substance of each such complaint and the action taken by Vanguard in response to the complaint.

No. 61:   All documents that refer or relate to each verbal or written, formal or informal charges, complaints, or allegations of inappropriate behavior or conduct, race-based discrimination, race-based harassment, hostile work environment, or retaliation made about each of the individuals identified on Exhibit A attached hereto by any employee, contractor, or client of Defendant, whether made internally or to an outside entity including, by way of example only, the Equal Employment Opportunity Commission

No. 75:   All documents pertaining to any and all internal investigations of Patrick Fertig, Mark Loikets and Doug Lammer related to any claim of discrimination, retaliation, harassment, hostile work environment, or unfair treatment or complaints that could factually support such claims.

No. 76:   All documents that refer to, relate to or evidence each verbal or written, formal or informal complaint regarding investigations conducted by Crew Relations, whether made internally or to an outside entity including, by way of example only, the Equal Employment Opportunity Commission.

No. 92:   All skip level forms for Line Managers and Team Leaders in the Participant Services Department in both Pennsylvania and Arizona from

                            January 1, 2008 to the present.

No. 94:       Any and all electronic mail or documents to Tom Wall, Wayne Parks, and Amy Cribbs related to complaints of retaliation, discrimination, hostile work environment or unfair treatment.

(First Request for Production of Documents, ECF No. 34-1). Plaintiff has narrowed these requests to cover the time frame from 2007 to the present, has narrowed the scope to departments supported by Crew Relations, and to all leaders below principal (*e.g.*, senior managers, team leaders, and line managers). (Lttr Aug. 22, 2014, at 2).

## II.  DISCUSSION

### A.  Plaintiff's Motion to Compel Defendant's Responses to Document Requests

#### 1.  *Legal Standard*

"It is well established that the scope and conduct of discovery are within the sound discretion of the trial court." *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). Pursuant to Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information sought in discovery need not be admissible at trial, as long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance is generally "construed broadly to encompass any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978).

Pursuant to Rule 37, a party who has received evasive or incomplete answers to discovery requests may move for an order compelling discovery. *See* Fed. R. Civ. P. 37(a)(1),

(4). The moving party bears the initial burden of showing that the requested discovery is relevant. *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). The burden then shifts to the party opposing discovery to articulate why discovery should be withheld. *Id.* The party resisting production must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Young v. Lukens Steel Co.*, No. 92-6490, 1004 WL 45156, at *2 (E.D. Pa. Feb. 10, 1994) (quotations and citation omitted).

While generally liberal, permissible discovery is not without limitations. Discovery should not serve as a fishing expedition. *Upshaw v. Janssen Research & Development, LLC*, No. 11-7574, 2014 WL 1244047, at * 3 (E.D. Pa. Mar. 26, 2014); *see also Claude P. Bamberger Int'l v. Rohm & Haas Co.*, No. 96–1041, 1998 U.S. Dist. LEXIS 11141, at *5–6 (D.N.J. Mar. 31, 1998) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so.") (quoting *In re Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y. 1975)).

### 2. *Dispute Regarding the Scope of Plaintiff's Case*

At the hearing on Plaintiff's motion to compel, both counsel advised the Court that their disagreement as to the relevance of the disputed materials springs from a general disagreement as to the breadth of Plaintiff's case. Defendant argued that Plaintiff's requests for broad, company-wide materials go beyond the scope of this case. According to Defendant, these materials would be relevant only to a so-called "pattern or practice" claim, and an individual

plaintiff cannot bring such a claim. In response, Plaintiff explained that, contrary to Defendant's contention, materials relating to Vanguard's systemic discriminatory practices are relevant to his disparate treatment, disparate impact, and hostile work environment claims.

As an initial matter, I note that there seems to be some disagreement and/or confusion regarding the phrase "pattern or practice," and how it applies in employment litigation. The phrase "pattern or practice" discussed in the cases Defendant cites is used in a technical sense to refer to the burden-shifting framework set forth in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), and available to class-action plaintiffs in private actions alleging discrimination, as well as to the government in 42 U.S.C. § 2000e-6 actions.[3] *See Semstroth v. City of Wichita*, 304 F. App'x 707, 716 (10th Cir. 2008); *Bacon v. Honda of Am. Mfg.*, 370 F.3d 565, 575 (6th Cir. 2004); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998), vacated on other grounds, 527 U.S. 1031 (1999). By contrast, Plaintiff here appears to use the phrase in the more general sense to refer to Defendant's allegedly unlawful employment policies and practices. While Defendant is correct that Plaintiff may not use the "pattern or practice" method of proof developed in *Teamsters* to establish his individual Title VII claims, evidence of Defendant's employment patterns and practices may be relevant to both his disparate treatment and disparate impact claims. *See Chin v. Port Authority of NY and NJ*, 685 F.3d 135, 149 (2d Cir. 2012) (emphasizing that "evidence that the [defendant] engaged in a pattern or practice of

---

[3] Unlike a typical individual disparate treatment suit, "a plaintiff's burden under the pattern-or-practice method requires the plaintiff to prove only the existence of a discriminatory policy rather than all elements of a prima facie case of discrimination." *Semsroth*, 304 F. App'x at 716.

discrimination — in the ordinary sense of those words, rather than in the technical sense describing a theory of liability for discrimination — remains relevant in assessing whether the plaintiffs proved discrimination using the individual disparate treatment and disparate impact methods of proof"); *Bacon*, 370 F.3d at 575 ("[P]attern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework.").

Furthermore, to the extent it remains unclear, I note that Plaintiff has included in the Complaint a disparate impact theory of the case. While the Court takes no position on the sufficiency of the pleading or the viability of this claim, it is plainly raised in Count I of the Complaint. (Compl. 22-23, ECF No. 1) ("Vanguard, by its conduct toward Lafate and other Black employees, has engaged in a pattern or practice of race, color, and/or national origin discrimination, and Vanguard's facially neutral policies, practices, and customs regarding promotions, discipline and the reporting and investigating of employee complaints of discrimination and harassment has a disparate impact on African-Americans and those individuals with different or perceived national origins in violation of Title VII.").

### 3. *The Document Requests*

Having clarified that Plaintiff's case, as set forth in his Complaint, is not limited to solely a disparate treatment claim, the Court nonetheless agrees with Defendant that Plaintiff has not met his burden of demonstrating to the Court how each of his document requests is relevant to his disparate treatment, disparate impact, hostile work environment, and retaliation claims.

To determine whether the materials that Plaintiff seeks are relevant to his claims, we must look to the elements of each individual claim. In order to prove a disparate treatment claim

under Title VII, Section 1981, and/or the PHRA,[4] Plaintiff must show that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). With regard to the fourth requirement, Plaintiff can satisfy his burden by demonstrating that he was treated less favorably than a similarly situated employee outside of the protected class. *Jones v. School Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999).

In order to prove a disparate impact claim, Plaintiff must demonstrate that a specific facially neutral employment practice has a disproportionate impact on members of a protected class. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 994 (1988).

In order to establish a prima facie case of retaliation, Plaintiff must show that: (1) he engaged in statutorily protected activity; (2) the employer took adverse action against him; and (3) a causal link exists between the protected activity and the employer's adverse action." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

In order to establish a prima facie case of a hostile work environment, Plaintiff must show that: (1) he suffered intentional discrimination because of his membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person in the same position; and (5) the existence of respondeat superior liability. *See West v. Philadelphia Elec. Co.*, 45 F.3d 744, 753 (3d Cir. 1995).

---

[4] Claims under Title VII, § 1981, and the PHRA are analyzed under the same framework. *Paradoa v. Phil. Housing Auth.*, No. 13-6012, 2014 WL 2476595, at *3 n.48 (E.D. Pa. Jun. 2, 2014).

As previously noted, Plaintiff bears the burden of demonstrating to the Court that his document requests are relevant to these claims. For the reasons explained below, I find that he has failed to carry this burden.

### *a.       The Disparate Impact Requests*

Plaintiff maintains that request Nos. 13-15, 34-35, and 57-59 seek information directly related to his claims regarding Defendant's policies and practices that disparately impact African-Americans. In his recent letter to the Court, Plaintiff explained that these requests "seek information directly related to [his] claims regarding the disparate impact of Defendant's policies and practices and the racially hostile work environment in operation in Mr. Lafate's department (e.g. its 'forced rankings' and process of 'managing out' employees who are declared not to be a 'good fit' and the numerous instances in which racial minorities were denied opportunities, which Vanguard often uses minority managers like Mr. Lafate to implement." (Lttr Aug. 22, 2014, at 1-2)). Plaintiff made similar statements in the underlying motion to compel, but did not elaborate how the requested materials specifically support his claims.

These broad statements are insufficient to demonstrate to the Court that the requested materials are relevant to Plaintiff's disparate impact claims. *See Morrison*, 203 F.R.D. at 196 (explaining that moving party bears the initial burden of showing that the requested discovery is relevant). As noted above, in order to prove a disparate impact claim, Plaintiff must demonstrate that a facially neutral policy or practice at Vanguard has a disproportionate impact on African-Americans. *See Watson*, 487 U.S. at 994. To do so, he must identify "certain practices that are 'facially neutral in their treatment of different groups' but 'in fact fall more harshly on one group than another.'" *Byrd v. City of Philadelphia*, No. 12-4520, 2013 WL 5728669, at *3 (E.D. Pa.

Oct. 22, 2013) (quoting *Teamsters*, 431 U.S. at 335-336).  However, neither of the two practices that Plaintiff identifies — *i.e.*, "forced rankings" and "managing out" minorities — seem to fit into this standard.  Plaintiff does not explain what he means by "forced rankings," and the practice of "managing out" minorities that he describes does not appear to be a "facially neutral" practice.  Based on the record before the Court, it is not clear whether "forced rankings" and/or "managing out" are actual policies or practices at Vanguard.  Based on the record before the Court, we cannot conclude that these concepts are the type of facially-neutral practices (if they are, indeed, actual policies or practices of Vanguard) that might form the basis of a disparate impact claim.  For this reason, Plaintiff has not met his burden of demonstrating how the "Disparate Impact" document requests, discussed more fully below, are relevant to his disparate impact theory.

First, Plaintiff has not adequately explained how documents relating to Defendant's diversity programs, and statistical data and focus group results relating to the progress of such programs (Nos. 13 and 14), will support the elements of a disparate impact claim.[5]  Next, given that, as discussed above, Plaintiff has not sufficiently identified to the Court any facially neutral policies that disproportionately impact African-Americans, he has not met his burden of demonstrating the relevance of documents reporting on the hiring, promotion, retention, discipline, transfer, termination, and pay of African American Vanguard employees (Nos. 15 and 57).  Nor will the Court compel Defendant to produce statistics about the racial composition of its workforce (Nos. 34-35) without a better explanation as to how these statistics will show that

---

[5] I further note that some courts have found that public policy favors non-disclosure of affirmative action policies in order to ensure that employers frankly and candidly assess such programs.  *See, e.g.*, *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 58 (E.D. Pa. 1979).

African-Americans are disproportionately impacted by a specific policy or policies. While Plaintiff will be required to prove a significant statistical disparity of some sort in order to make a prima facie showing of disparate impact, he cannot ask for statistics now, and then identify the specific policies later. *See Upshaw*, 2014 WL 1244047, at * 3 (noting that discovery should not serve as a fishing expedition). Lastly, Plaintiff has not adequately explained to the Court how performance ratings for all managers in the department, identified by race and gender (No. 58), and files on all African-American managers who have been terminated (No. 59), are relevant to his claims.

### b. *The Deficient Enforcement and Crew Relations Requests*

Plaintiff has likewise failed to meet his burden of demonstrating how the Deficient Enforcement and Crew Relations requests — which primarily seek information on discrimination complaints filed by other employees — are relevant to his particular claims. Plaintiff contends that "these requests seek information directly related to [his] claims regarding Defendant's retaliatory and discriminatory behavior, including Vanguard's inadequate enforcement of its policies and its systemic use of its human resources department to justify the actions of discriminators and silence or terminate their victims." (Lttr Aug. 22, 2014, 2).

First, to the extent that Plaintiff contends that these materials are relevant to his disparate impact claim, he does not explain how the details of complaints made by other African-Americans against other Vanguard employees (Nos. 16, 46-56, 61, 94) will help him demonstrate that the facially neutral policies he has identified (its 'forced rankings' and process of 'managing out' employees who are declared not to be a 'good fit') have a disproportionate impact on African-Americans. Nor does he explain how materials relating to all complaints

about Crew Relations' investigations (No. 76) fit into his particular case. The Complaint does contain an allegation that Defendant "has a facially neutral internal complaint mechanism" through which "Crew Relations simply attempts to placate employees who complain of discrimination, while helping known discriminators justify their discriminatory conduct and re-frame it under facially neutral policies" (Compl. ¶ 14, ECF No. 1), but Plaintiff has not explained how the materials he seeks support a claim that this policy has a disproportionate impact on African-Americans.[6]

Significantly, to the extent that Plaintiff contends that these materials are relevant to his disparate treatment, hostile work environment, and retaliation claims, it appears that Defendant has already produced non-privileged documents relating to complaints of race discrimination filed by other African-American employees in which the alleged wrongdoers in the Complaint (Jennifer Vastardis, Wayne Park, Mark Loikits, Patrick Fertig, and Doug Lammer) are also the alleged wrongdoers. The Court agrees with Defendant that these materials are sufficiently responsive to request Nos. 16, 46-47, 48, 49, 53, 54, 55, 56, 61, 75, and 94. *See Getz v. Commonwealth of Pa. Blindness and Visual Services*, No. 97-7541, 1998 WL 961901 (E.D. Pa. Dec. 18, 1998) ("Discovery in disparate treatment cases has been limited to employees within certain work units and who have suffered similar treatment as the plaintiff."); *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 56 (D.N.J. 1985) (noting that courts ruling on discovery motions in disparate treatment cases have limited discovery to the work unit of the plaintiff, the job category to which plaintiff belongs, the type of action by which plaintiff was

---

[6] Defendant has already produced to Plaintiff policies and training materials regarding the handling of internal complaints. (Resp. 3, ECF No. 37).

aggrieved (*e.g.*, hiring, promotion, discharge, etc.), and the type of discrimination alleged (*e.g.*, race, age or sex)).   With respect to request No. 92, which seeks all skip level forms for Line Managers and Team Leaders in the Participant Services Department in both Pennsylvania and Arizona from 2007 to the present, it is unclear to the Court how these documents would support Plaintiff's discrimination case, as the request is not limited to materials concerning Plaintiff himself, the identified wrongdoers, or any alleged comparators.  Defendant produced the documents reflecting skip level feedback for Plaintiff from January 1, 2009 to the present.

Next, Plaintiff argues that "[t]his information will also provide Plaintiff with information regarding what Vanguard knew or should have known about the discrimination that Plaintiff was facing and information to respond directly to Defendant's defense regarding Plaintiff's refusal to identify other employees whom he knew or would be subject to retaliation by Crew Relations and senior management." (Lttr Aug. 22, 2014, 2).  While Defendant contends that it has already produced all documents relating to Plaintiff's internal discrimination complaint and its investigation into that complaint, Plaintiff claims that Defendant refuses to provide certain relevant documents on the basis of privilege.  (Lttr Aug. 22, 2014, 2-3).  In response, Defendant correctly notes that the issues regarding privilege have not been raised in Plaintiff's motions and have not yet been briefed, and therefore are not properly before the Court.  (Lttr Aug. 22, 2014, at 4).  For this reason, the Court will not address the issue of privilege at this time.

Finally, the Court notes that Defendant has demonstrated that the burden associated with producing company-wide discovery of internal complaints would be significant.  Defendant submitted the deposition testimony Dena Bailly, a Vanguard Crew Relations Specialist, who stated that there is no way to search the Crew Relations database for complaints of race

discrimination other then manually reviewing all records in that database. (Resp. Exh. G, ECF No. 37-7). Without further explanation from the Plaintiff as to how complaints of race discrimination involving individuals that have nothing to do with this lawsuit are relevant to Plaintiff's claims, the Court will not impose on Defendant the burden of such broad discovery. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) (providing that the court must limit "discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit").

### 4. *Defendant's Request for Fees and Costs*

In its brief in opposition to Plaintiff's motion, Defendant asks the Court to award Defendant its fees and costs incurred in opposing the motion. *See* Fed. R. Civ. P. 37(a)(5)(B) (providing that, if the Court denies a party's motion to compel, it "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party [] who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees . . . . [unless] the motion was substantially justified or other circumstances make an award of expenses unjust"). Given that, as discussed above, the parties had a genuine dispute as to the scope of discovery in this case, the motion is denied.

### B. **Plaintiff's Request for Leave to Take Additional Depositions**

Plaintiff has already taken or scheduled ten depositions as permitted by Rule 30(a)(2)(A) of the Federal Rules of Civil Procedure. Plaintiff now moves the Court for leave to take five additional depositions. First, Plaintiff seeks permission to depose Yasmeen Toney. Plaintiff explains that Ms. Toney serves as his current skip-level supervisor, and that, through the deposition of Robert Grossi on July 14, 2014, he learned that Ms. Toney may have information

17

related to the continued retaliatory treatment to which Plaintiff was subjected under Mr. Grossi. Next, Plaintiff seeks permission to depose Barry Buckhart, who, according to Plaintiff, was present at a meeting in which another man referred to Plaintiff as a "n-----." Lastly, Plaintiff seeks permission to depose William Matysik, Jeffrey Lampinksi and Michael Sabin, who, according to Plaintiff, were involved in the second investigation into his internal complaints. Defendant opposes all five depositions on the grounds that Plaintiff has not been diligent in seeking these depositions, they would be duplicative, and the cost of the duplicative depositions outweighs their likely benefit given the nature of this case.

Rule 30(a)(2)(A)(i) of the Federal Rules of Civil Procedure sets forth a limit of ten depositions that a party may take without leave of court. To exceed this limit, a party must demonstrate that the Rule 26(b)(2) factors weigh in favor of permitting additional depositions. *Donastorg v. FirstBank de Puerto Rico*, No. 2003-117, 2007 WL 3124785, at *3 (D.V.I. Oct. 15, 2007).

The Court will grant Plaintiff permission to depose Ms. Toney because Plaintiff demonstrated at the August 20, 2014 hearing that she may have information related to Plaintiff's retaliatory treatment that is relevant to his case.

The Court will deny Plaintiff's request to depose the other four witnesses because the information he seeks from them is duplicative of other discovery and the burden/expense of these depositions outweighs their likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C)(I) and (iii).

Defendant's Request for fees is denied. *See* Fed. R. Civ. P. 37(a)(5)(B).

### C. Plaintiff's Supplemental Motion to Compel Defendant Vanguard's Response to Discovery

On July 15, 2014, Plaintiff filed a "supplemental motion" arguing that, in addition to failing to submit materials responsive to the document requests identified in its original motion, Defendant had also failed to submit certain materials responsive to other document requests. (ECF No. 42). At the August 20, 2014 hearing on Plaintiff's motions, the Court instructed the parties to update the Court as to the current status of the various discovery disputes. Both parties did so by letters dated August 22, 2014 and August 25, 2014. These letters do not include any discussion of the document requests at issue in Plaintiff's supplemental motion. Therefore, the Court will assume that the parties have resolved them and will, accordingly, deny this motion as moot.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel will be DENIED; Plaintiff's Supplemental Motion to Compel will be DENIED AS MOOT; and Plaintiff's Motion for Leave to Take Additional Depositions will be GRANTED IN PART and DENIED IN PART.

An appropriate order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski  
LYNNE A. SITARSKI  
UNITED STATES MAGISTRATE JUDGE